CHARLES W. CANFIELD, APPELLANT, v. ERASTUS A. TILLOTSON, IMPLEADED WITH WILLIAM F. GURLEY, APPELLEE.

1. **Specific Performance.** On the 31st day of July, 1886, G. purchased from T. a city lot, and took a receipt for $50, advanced as part payment of the purchase price, which was $1,800; the terms being that $1,000 cash should be paid on delivery of a deed, G. to assume the payment of a mortgage of $750; the receipt containing a stipulation that, "If final payment is not made within twenty days, all rights are to be forfeited." Possession was not taken by the vendee. At the expiration of the twenty days T. tendered to G. a warranty deed, and demanded payment, which was refused, the reason assigned being that one C. had instituted against T. an action for the specific performance of a contract of sale made on the 9th day of August following the date of the contract made between the parties, but which sale was shown to have been made by an agent, without authority, and of which G. had notice. On the twenty-third of June, 1887, G. filed his answer and cross-bill in the suit of C. against T., by which he sought a specific performance and conveyance of the property. In the meantime the property had greatly in-

creased in value, owing to the construction of a cable road in an adjoining street. It was *Held*, That time was of the essence of the contract, and that G. could not enforce it.

2. ——: RESCISSION. In such case the fact that an action had been instituted against the vendor for the purpose of enforcing a contract of sale, which was known to the vendee to be void, and could not be enforced, would not relieve the vendee from the performance of the contract on his part, when demanded by the vendor, and his refusal so to do would be a rescission of the contract on his part.

APPEAL from the district court for Douglas county. Heard below before GROFF, J.

*Congdon, Clarkson & Hunt,* for appellant Tillotson, cited: *Doyle v. Teas,* 4 Scam., 202. Story's Eq. Jur., Sec. 776 and note. *Hellreigle v. Manning,* 97 N. Y., 56. *Kimball v. Tooke,* 70 Ill., 553. *Chapman v. Morgan,* 55 Mich., 124. *Van Campen v. Knight,* 63 Barb., 205. *Wells v. Smith,* 2 Edw. Ch., 78. *Taylor v. Merrill,* 55 Ill., 52. *Barker v. Critzer,* 35 Kan., 459.

*C. H. Marple, W. F. Gurley,* and *R. S. Hall,* for appellee Gurley, cited: *Gartrell v. Stafford,* 12 Neb., 551. Pomeroy on Contracts, Specific Performances, Secs. 168, 170. *Clute v. Robison,* 2 Johnson, 595. *Everson v. Kirtland,* 4 Paige, N. Y., 638. *Dearth v. Williamson,* 2 Sergt. & Rawle, Pa., 498. *Chambers v. Tulane,* 9 N. J. Eq., 146. *Shreck v. Pierce,* 3 Iowa, 350. Waterman on Spec. Perf., Sec. 414. *Shuman v. Willets,* 17 Neb., 478. *Morgan v. Hardy,* 16 Neb., 427. *Hopper v. Hopper,* 16 N. J. Eq. 147.

REESE, CH. J.

On the 10th day of August, 1886, Charles W. Canfield, by his attorneys, Savage, Morris & Davis, filed in the district court his petition for the specific performance of a contract for the sale of real estate, alleged to have been made

by defendant Tillotson on the 9th day of the same month, or the day previous. It was alleged in the petition that, on the 9th day of August, 1886, plaintiff entered into a contract with defendant to purchase of defendant the south fifty feet of lot 9, in block 17, in E. V. Smith's addition to the city of Omaha, for the sum of $2,000, of which plaintiff paid $25, and was to pay the remainder after reasonable time in which to investigate the title, except the sum of $750, for which there was a mortgage on the property, the payment of which mortgage the plaintiff was to assume. The contract declared upon was as follows:

"OMAHA, NEB., Aug, 9th, 1886.

"Rec'd of C. W. Canfield twenty-five ($25) dollars as part payment of part of lot 9, block 17, E. V. Smith's Add. to Omaha. Price of lot to be $2,000; terms $1,000 cash, title to be satisfactory to purchaser.

"E. A. TILLOTSON,
"per Cannon, Agt."

It was alleged that Cannon was the agent of defendant, duly authorized in writing, at the time of said sale.

This petition need not be further noticed.

On the 19th day of August, 1886, what is denominated a stipulation was filed in the cause, which is as follows:

"In the district court, state of Nebraska, County of Douglas.

"CHARLES W. CANFIELD,

vs.

ERASTUS A. TILLOTSON.

"It is hereby agreed that William F. Gurley, Esq., be allowed to be made party defendant in this case and file answer, this date, August 19th, 1886.

"SAVAGE, MORRIS & DAVIS,
"Plff's Attorneys."

On the 31st day of August, of the same year, defendant

filed his answer to Canfield's petition, setting up a general denial of all its allegations.

On the 4th day of June, 1887, the following entry was made in the journal:

"Charles W. Canfield against E. A. Tillotson, et al.

"MOTION.

"Now comes William F. Gurley, by his attorney, and represents to the court that he has an interest in the property in the petition herein described, and on his motion, and all parties consenting thereto, he is hereby made a party defendant in this case, with leave to plead within ten days."

On the 23d day of the same month, William F. Gurley filed an answer and cross-petition, in which he denied that any valid contract was made by plaintiff for the purchase of the property, and alleged that on the 31st day of July, 1886, he entered into a contract with defendant Tillotson, the owner of the real estate, for its purchase, which contract was in writing as follows:

"Received of W. F. Gurley, fifty ($50) for part payment for the south fifty ft. of lot nine (9) in block seventeen (17), E. V. Smith's addition to the city of Omaha; terms $1,000 cash on delivery of deed, purchaser to assume mortgage of $750 due in one year from date, mortgage interest running at eight per cent per annum. The purchase price being $1,800, the purchase price subject to the taxes of 1886. If final payment is not made within twenty days from date, all rights to be forfeited.

(Signed) "E. A. TILLOTSON."

It is alleged that upon the signing and delivery to him, Gurley, of said contract, he paid the sum of $50 earnest money, and that before the expiration of the twenty days in which he had to complete payment of the money, an agent of Tillotson, although not appointed in writing, made the pretended sale of the land to the plaintiff, and the plaintiff relying on said sale, and the false representations of said

agent that he was legally authorized in writing, upon the refusal of the defendant Tillotson to convey said premises, commenced this action, and thereby cast a cloud on the title of Tillotson, disqualifying him from conveying the real estate to defendant Gurley; that before the expiration of the period limited by the contract for the payment of the $1,000 he tendered the amount thereof to Tillotson, conditional upon his procuring a dismissal of plaintiff's action; and that he had at all times been ready and willing to pay the amount in full upon said action being dismissed, or should decree be entered adverse to plaintiff. The prayer of his answer was for a decree for the performance of the contract.

To this cross-bill Tillotson answered, admitting the execution of the receipt, and denying the tender, and willingness on the part of Gurley to perform the contract; also denying that the suit by Canfield cast any cloud upon his title, or disqualified him from conveying the real estate to Gurley in compliance with the contract of sale. It was alleged that on the 19th day of August, that being the last day in which the contract could be performed, he executed a conveyance of the property, with the usual covenants of warranty, and tendered the same to Gurley, but which was refused, and that thereupon the contract was declared forfeited, in accordance with its provisions, which by its terms made time of its essence; that after the tender of the deed and the refusal to accept it by Gurley, the property had greatly increased in value, and that it would be unjust and unequitable to compel the specific performance of the contract.

A trial was had to the district court, which resulted in a finding and decree dismissing Canfield's petition, and requiring defendant to convey the property to Gurley. From this decree defendant appeals.

There was no testimony introduced on the part of Canfield for the purpose of maintaining his case, the contest being between Gurley and defendant.

In the order of their occurrence, it appears that, on the 31st day of July, the contract between Gurley and Tillotson was made, and signed by Tillotson. It was in effect an option to Gurley to purchase the property within twenty days, he paying therefor the sum of $50, with the agreement that if final payment was not made within the time specified, all rights under the contract to be forfeited.

On the 9th of the following month, the receipt was given by Cannon to Canfield, and on the next day Canfield commenced his action. Gurley's option expired on the 19th day of the same month, and on that day Canfield's attorneys filed what is denominated a stipulation, agreeing that Gurley be allowed to be made a party defendant and file his answer of that day. This stipulation was signed alone by Canfield's attorneys. On that day the deed was tendered to Gurley by Tillotson, and the money demanded according to the terms of their contract. On the 4th day of June, 1887, Gurley applied to be made a party defendant, and was permitted to do so, with leave to plead in ten days. On the 23d day of the same month, and nineteen days thereafter, he filed his cross-bill. It appears from the evidence that, at or about the time of the tender of the deed, Gurley was informed that Cannon had no written authority to bind Tillotson, and that the contract made by him to Canfield could not be enforced. It appears also, that at the time of the execution of the receipt by Tillotson to Gurley, there was some probability that the line of cable or street railroad, which was then in process of construction, would be located along the street in front of the property in dispute, but that at the expiration of the twenty days the line had not been definitely located. It was, however, constructed on that street, and the property rapidly increased in value, until at the time of the trial it was shown to be worth in the neighborhood of $5,000. Possession of the property was never taken by the vendee, and he made no improvements thereon.

As we have said, the first action taken by Gurley, looking toward the enforcement of the contract, was on the 4th day of June, 1887, but his answer, by which he sought to enforce the performance of the contract, was not filed until the 23d, nearly eleven months after the execution of the contract. It is quite clear that, from the date of the signing of the receipt by Tillotson until that time, at least, Gurley was in no sense bound to perform any of the requirements contained in it to be performed by him. It is quite clear that the alleged sale to Canfield did not bind Tillotson, and created no obligation as against him, even had it been made prior to the date of the receipt to Gurley. On the 19th of August, the expiration of the time mentioned in the receipt, there was no certainty as to the location of the cable line, and it seems to have been doubtful whether the investment would be desirable in case it should be located upon another street.

As stated in *Kimball v. Tooke*, 70 Ill., 553, at page 561, "It is difficult to avoid the impression that these facts make, that the objection taken to the title, so unsubstantial in their character, were a mere invention to postpone the consummation of the contract until after" the question of the location of the street railroad had been settled. If it should not be located within the vicinity of the lot in dispute there would be little or no speculation in the purchase. Its location upon an adjoining street would materially affect the value of the property. If favorable to the investment, plaintiff could insist upon a fulfillment of the contract; if unfavorable, he could make the objection of a defect in or cloud upon defendant's title as a basis for declining to proceed further. He was clearly in default when he refused to accept the deed and pay the purchase price agreed upon. At that time he, in effect, forfeited his contract, and Tillotson was released therefrom.

There is no question of conflicting evidence presented. The evidence throughout sustains the conclusion which we

have reached, and even upon the showing of Gurley himself, by himself and other witnesses upon the stand, he is not entitled to a decree.

The decree of the district court is therefore reversed, and the cause dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.