CITY OF GRAND ISLAND ET AL., APPELLANTS, V. PEARL D. WILLIS, COUNTY TREASURER, ET AL., APPELLEES: STATE OF NEBRASKA, APPELLANT.

7 N. W. (2d) 457

FILED JANUARY 6, 1943. No. 31508.

*Herbert F. Mayer* and *Walter R. Johnson, Attorney General,* for appellants.

*Suhr, Davis, Heyde & Cronin* and *Louis A. Holmes,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

The city and school district of Grand Island brought this action against the treasurer and county of Hall, Nebraska, praying for an adjudication that said defendant county treasurer was acting as agent or trustee with respect to certain real estate, and to require an accounting for the proceeds from the sale thereof, and for general equitable relief. The state was made a party, it having an interest in the taxes and the real estate in question. The state answered, joined in plaintiff's petition and adopted the plaintiff's prayer for relief. The defendant treasurer and the county demurred to the petition for the reason that it failed to state a cause of action. This demurrer was sustained. The plaintiffs elected to stand upon the petition, and the action was dismissed. Motion for a new trial was overruled; hence, this appeal.

The plaintiffs (appellants) contend that the court erred in holding that the petition and the answer of the state, joining therein, did not state a cause of action. The case concerns the validity and effect of a course of action of Hall county in bringing tax lien foreclosures under section 77-2039, Comp. St. 1929, as amended. The county directed the county attorney to foreclose the lien for all taxes where the property had been offered for sale for three consecutive years and not sold for want of bidders. Sixteen of these

actions concerned real estate within the territory of the plaintiffs. Decrees of foreclosure were entered therein, and on April 4, 1939, the board of supervisors adopted the following resolution:

"Whereas, a large number of pieces of property are being sold for delinquent taxes under the tax foreclosure suits heretofore commenced in the district court of Hall county, Nebraska, and in order to prevent the property so sold from going at an unsatisfactory figure, and to secure some return therefrom; be it resolved by the County Board of Hall county, Nebraska:

"1. That the Finance Committee of this County Board be and they are hereby instructed to attend said sale and all future sales held under the present suits.

"2. That said Committee be and they are hereby authorized to purchase in the name of the County all property for which there are no other bidders, said purchase being solely and exclusively on the present actions, as Trustee for all the various different subdivisions, State, School Districts, City and County, and not for the use and benefits of the County alone.

"3. That said purchase shall be by the plaintiff as in protection of the first lien in the same effect as the purchase of real estate by the mortgagee at mortgage foreclosure sale.

"4. That said Finance Committee be and they are hereby authorized to withdraw from the sale such properties, as shall not, in the opinion of the Finance Committee, bring a sufficient sum.

"5. In general, said Finance Committee be and they are hereby given full power to act in connection with said tax foreclosure sales."

Thereafter, and pursuant to said resolution, sales were had, and some 1,200 pieces of property were sold to the county within the territory of plaintiffs' districts. The county was the only bidder, and with few exceptions the county bid the property in as trustee at 10 cents for each parcel thereof. Plaintiffs were advised that the county was purchasing the property as trustee and relied upon said ac-

tion. The sheriff did not require the county to pay the bid price, since it was the defendant that bought in the property as trustee for the benefit of the persons entitled thereto. The petition in each of the 16 cases contained a clause that the county of Hall was the owner and holder of the general real estate taxes and entitled to collect the same for the use and benefit of the various governmental bodies entitled to the same. The county waited the prescribed two years and, through its legal representative, moved for an order of confirmation, the motion containing the following: That in each case the property so sold was bid in by the county of Hall, as trustee for all collecting bodies at the price of 10 cents for each of said bids, being materially less than the amount in the decree of foreclosure for delinquent taxes, and in each instance being less than the amount of taxes levied and assessed against the premises, with interest and penalties. The sales were confirmed; sheriff's deed issued to Hall county, and recorded by it. The county did not pay subsequent taxes, but charged off the same on the books of the county treasurer, acting on the theory that it had purchased the property as trustee for the benefit of everybody who was entitled to a proportion of the taxes in all respects as though the defendant trustee had itself bid in the property in a mortgage foreclosure proceeding. The county sold certain of these properties without paying subsequent taxes and the amount of the bid, and refused to pay over the proportionate share of the purchase price paid to it which belongs to the plaintiffs and the state of Nebraska. The county treasurer has now in his hands a substantial amount of money, the exact amount unknown, to plaintiffs, received from the sales. The county claims the money as its own and disclaims any right of the plaintiffs and defendant state. The plaintiffs plead estoppel substantially as follows:

"These plaintiffs further allege that they have relied upon the good faith of the county of Hall; that irrespective of any claim that may be made now that said county of Hall was not in a position to act as trustee, that said coun-

ty of Hall was in truth and in fact trustee for the collection of said taxes and in none of said instances were tax sale certificates issued; that the proceedings were under section 77-2039, Compiled Statutes of Nebraska for the year 1929 as amended, and that said county of Hall is not now in a position to claim that it was not acting as an agent or trustee, or either or both of them, for the benefit of the tax collecting bodies, and is estopped from denying the same and should be compelled to act."

The appellants' contention is based solely on the parcels of real estate bid in by the county, the sale being confirmed in and subsequently sold by the county, money received by the county and retained by it, and the county refused to make a distribution of the proportionate share of taxes to which each of the plaintiffs and defendant state are entitled.

As said in *Payne v. Anderson*, 80 Neb. 216, 114 N. W. 148: "The demurrer admits all material facts alleged in the petition." Allegations of a pleading must be taken as true on demurrer thereto. *Roper v. Milbourn*, 93 Neb. 809, 142 N. W. 792. At this point it is well to consider section 77-2039, Comp. St. Supp. 1937. This section provides in part as follows:

"Counties shall have a lien upon real estate within their boundaries for all taxes due thereon to the state, county or any subdivision thereof. After any parcel of real estate has been offered for sale for taxes for three consecutive years, and not sold for want of bidders, the County Commissioners shall make and enter an order directing the County Attorney to foreclose the lien for all taxes then delinquent, in the same manner, except as herein provided, and with like effect as if such lien were a mortgage * * * . The sale shall be conducted in the same manner as sales of real estate upon execution, and each parcel shall be sold to the highest bidder for cash, provided, however, that no parcel shall be sold for a less sum than the amount of bid plus the costs apportioned against it to the date of sale. The purchaser shall pay all taxes which may thereafter be lev-

ied against the parcels purchased by him, as the same shall fall due. * * * The owner of the fee or any person * * * may redeem at any time within two years from the date of the sale * * * . At any time after the expiration of two years the court shall, on motion of the county attorney, examine the proceedings, and, if they are found to be correct, and if the subsequent taxes have been paid to date, shall make and enter an order of confirmation, and shall direct the sheriff to make and deliver to the purchasers without further cost to them, a sheriff's deed for any real estate not redeemed. No sales shall be confirmed and no deeds shall be ordered by the Court until all taxes accruing subsequent to the foreclosure have been paid. The delivery of such deed shall pass title to the purchaser free and clear of all liens * * * . From the proceeds of the sale of any separate parcel the costs * * * shall first be paid. The balance thereof, or so much as is necessary, shall be paid to the governmental subdivisions entitled thereto in discharge of their claims. * * * If the proceeds are insufficient to pay the costs and taxes, the amount remaining shall be prorated among the governmental subdivisions."

The judicial history of section 77-2039, Comp. St. Supp. 1937, is portrayed by the following cases. Prior to 1903 there was no provision of our statute analogous to said section. It first appears as section 231, ch. 73, Laws 1903. The reason for its passage is apparent in the holding in *Logan County v. Carnahan*, 66 Neb. 685, 92 N. W. 984, which was adopted in 1902. The court held: "As the law now stands, no action for the foreclosure of a tax lien can be maintained, unless based upon a tax deed or tax sale certificate." Consequently what is now section 77-2039 was passed by the legislature in 1903.

In the case of *Commerial Savings & Loan Ass'n v. Pyramid Realty Co.*, 121 Neb. 493, 237 N. W. 575, section 77-2039, *supra*, was held to be constitutional and also held to be an act complete in itself. In the opinion it was said (p. 500): "This act, section 77-2039, Comp. St. 1929, provides the only complete, independent method for the fore-

closure of delinquent tax liens by a county in case no administrative sale has been had prior thereto. Foreclosure of tax certificates purchased by counties or by individuals are conducted under sections 77-2041 to 77-2047, Comp. St. 1929, and should not be confused in any way with the procedure (as set forth in section 77-2039, *supra*)."

In *City of Plattsmouth v. Hazzard,* 132 Neb. 284, 271 N. W. 801, this court held: "The redemption from a tax lien foreclosure by the city under section 77-2039, Comp. St. 1929, cannot be made by paying the amount of the bid, but may be made only by paying the full amount of the taxes due with interest. Const. art. 8, sec. 4." See, also, *Commercial Savings & Loan Ass'n v. Pyramid Realty Co., supra.* In *City of Plattsmouth v. Hazzard, supra,* the court said that "the city stands in the place of the county and is a trustee for the other governmental subdivisions for the enforcement of the payment of the tax." Citing *County of Lancaster v. Trimble,* 34 Neb. 752, 52 N. W. 711. The latter case used the language that the county was a trustee for the benefit of the other subdivisions of government for the payment of the tax, in a tax certificate foreclosure.

In *City of Plattsmouth v. Hazzard, supra,* the court may have applied the wrong section of the statute. It properly interpreted the provisions of section 77-2039, *supra.* In this connection see *Lincoln County v. Shuman,* 138 Neb. 84, 292 N. W. 30. In *Dawson County v. Whaley,* 134 Neb. 509, 279 N. W. 164, the court said (p. 516) : "It appears to the court that section 77-2039, Comp. St. Supp. 1937, is unambiguous. It is complete, and does not omit any necessary provision." The opinion quoted from the case of *Gibson v. Peterson,* 118 Neb. 218, 224 N. W. 272, a case involving tax sale certificates, and evidently adopting the construction of the statute with reference to tax sale certificates and applying it to section 77-2039, *supra.* In the *Gibson* case it was stated: "Where the language of a statute is clear and unambiguous it should be given effect according to its plain terms." In *Lincoln County v. Shuman, supra,* the tax sale certificate foreclosed was exclusively within the provisions of sections 77-2040 and 77-2041, Comp. St. 1929.

Without repeating the provisions of section 77-2039, *supra*, it is clear that the county is obligated to foreclose tax liens and account to other subdivisions of government for their *pro rata* share of taxes and make distribution accordingly. It is likewise required by its legal representative to institute the proper proceedings in foreclosure and to make presentation, on motion, to the court for confirmation of sales of real estate, as contemplated by said section. True, the statute makes the county trustee, but does not provide, nor can it be implied, that the county is privileged to go beyond the confines of the statute in endeavoring to protect itself, or the other subdivisions of government. The section does not provide for the county to bid a nominal sum in the event the real estate is not sold to other bidders. The act is specific with reference to subsequent taxes and that they must be paid. There is no provision of the act authorizing any officer to clear the tax books of subsequent taxes, or to waive the payment of costs in favor of the county. The act does not warrant or permit of the procedure followed by the county. If such construction be harsh, then the subject-matter involved must be addressed to the legislature and not to the court. Suffice it to say, the county, by and through its officers, in so bidding for the real estate under section 77-2039, Comp. St. Supp. 1937, acted beyond its authority and the scope thereof, and its acts in so doing are void.

According to the authorities heretofore cited, the county was trustee for other subdivisions of government for enforcement of payment of the tax. Regardless of the void acts on the part of the county and its officers, the result is that the county is in the following position: It owns certain parcels of real estate which it bid in and which were subsequently confirmed in it, sheriff's deed made, delivered and recorded. No objections were made to confirmation, and subsequently parcels of real estate were sold by the county, and the purchasers paid the county, the county retaining the proceeds therefrom and disclaiming that in any event it should be obligated to make distribution *pro rata*

of the sum so held by it to the plaintiffs and the defendant state. Under the provisions of section 26-104, Comp. St. 1929, "Each county shall have power: First. To purchase and hold the real and personal estate necessary for the use of the county, and to purchase and hold for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff or is interested." The reason for section 26-104, *supra,* is obvious. Counties are not permitted to indulge in the real estate business on a competitive basis in sales or upkeep.

Equity and good conscience will intervene in a case presenting such a factual situation as in the instant case. The county, simply because it is a creature of statute and possessing only the powers and authority with which its creator endowed it, stands in no different relation to those to whom it does an injustice than do individuals. It has a moral and equitable status to maintain.

In *Pimental v. City of San Francisco,* 21 Cal. 351, 361, the court said: "The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation." See, also, *Lincoln Land Co. v. Village of Grant,* 57 Neb. 70, 77 N. W. 349, quoting from the California case.

In *Logan County Nat. Bank v. Townsend,* 139 U. S. 67, 11 S. Ct. 496, it was said (p. 75): " 'The obligation to do justice,' this court said in *Marsh v. Fulton County,* 10 Wall. 676, 684, 'rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation.' "

The petition pleads estoppel. With reference thereto it is said in 10 R. C. L. 688, sec. 19, that, "While the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circum-

stances of the particular case, and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances." And in 31 C. J. S. 193, sec. 3, it is said: "It is commonly stated in many decisions that estoppels are odious and are not favored in law because they exclude the truth. Nevertheless, the wisdom and justice of the principle of estoppel, especially estoppel *in pais,* * * * are generally recognized, the view being founded on principles of equity, morality, and justice, and in accord with good conscience, honesty, and reason; and, as such, the doctrine subserves its true purpose as a plain, practical, fair and necessary rule of law."

Estoppel applies to controversies between public bodies. As said in *State v. Haid,* 328 Mo. 739, 747, 41 S. W. (2d) 806: "As to the applicability of equitable estoppel to controversies between public bodies, the Court of Appeals properly said: 'As a usual thing, the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to the exercise of governmental functions, but yet exceptions are to be made and where right and justice demand it, the doctrine will be held to apply, particularly where, as is true here, the controversy is between one class of the public as against another class.'"

In 31 C. J. S. 416, sec. 141, it is said that estoppel may exist where the controversy is between two or more public agencies; citing *State v. Haid, supra.*

This court in the case of *State v. Lincoln Street R. Co.,* 80 Neb. 333, 114 N. W. 422, held that the "state, like individuals, may be estopped by its acts or laches." And in *State v. McIlravy,* 105 Neb. 651, 181 N. W. 554, the court held: "The doctrine of estoppel *in pais has* application to municipal corporations, and city councils or public authorities will be estopped or not as justice and right may require." In the opinion the court said (p. 657): "The doctrine of estoppel *in pais* is applicable, and simply used to promote justice, equity and fair dealing between the parties involved. It resolves itself into a question of justice

and equity to prohibit fraud and inequity, and as a general rule, when equitable estoppel is once established by the evidence or the facts in a case, it operates as effectively as a deed or record. It is the law that estoppel is commensurate with the thing represented and operates to put the party entitled to its benefits in the same position as if the thing represented were true. It is a fundamental part of the doctrine of equitable estoppel that the estoppel extends only so far as may be necessary to protect from loss the party entitled to assail it."

In applying the doctrine of estoppel, it is quite apparent that it may be applied in a controversy between two or more public agencies. Such is this controversy. Definitely, it may be applied where the state, county or city or any other government agency is involved. The purpose of the doctrine has been heretofore set out. "It is based on the grounds of public policy and good faith, and is interposed to prevent injury, fraud, injustice, and inequitable consequences by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence." 31 C. J. S. 248, sec. 63.

As previously stated, and as shown by the authorities, the factual situation in each and every case and the circumstances surrounding it are so distinctively different that, out of numerous definitions, not a single one would apply in all cases wherein the question of estoppel is raised, but, as pointed out, where the circumstances are such that a grave injustice or inequity or fraud would be perpetrated by failing to apply the doctrine, as appears in the instant case, then it may be applied.

In the case at bar the county, through its proper legal representative, moved the court to confirm in it the sales of certain parcels of real estate. There was no objection thereto; the sales were confirmed; the county became the title holder by virtue of the sheriff's deed to it. This case does not involve the question of title to such real estate as

between litigants; what it does involve is reflected by the following: The county sold part of the real estate confirmed in it, obtained the money therefor, seeks to keep it under the contention heretofore set out, and refuses to make proportionate distribution thereof to the plaintiffs and defendant state. For such purpose the county is trustee. The money is the subject-matter. It cannot unjustly enrich itself and then object to making distribution that is specifically stated in the statute.

In this connection, the petition states a cause of action, and the demurrer should have been overruled. It was not the duty of the subdivisions of government here involved to ascertain the power and authority which the county had in the premises, in proceeding as it did, and the instant case presents a different legal conception than do cases such as *Garfield County v. Pearl,* 138 Neb. 810, 295 N. W. 820.

REVERSED.